NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PEDRO SANTOS, on behalf of himself and all others similarly situated, | : : : | |
| Plaintiff, | : : | **OPINION AND ORDER** |
| v. | : : : | No. 2:15-cv-864 (WHW-CLW) |
| CARRINGTON MORTGAGE SERVICES, LLC, AMERICAN MODERN INSURANCE GROUP, AMERICAN MODERN HOME INSURANCE COMPANY, MIDWEST ENTERPRISES, INC., d/b/a AMERITRAC BUSINESS SOLUTIONS, and SOUTHWEST BUSINESS CORPORATION, | : : : : : : : : : : | |
| Defendants. | : : | |

**Walls, Senior District Judge**

A New Jersey homeowner brings this putative class action against his mortgage loan servicer and several insurers, alleging a kickback scheme involving force-placed hazard insurance. The alleged facts and legal arguments mirror those in several other actions across the country. Some district courts have dismissed similar actions for failure to state a claim upon which relief can be granted; others, including courts in this circuit, have allowed them to proceed to discovery. Each Defendant now moves to dismiss this complaint under Fed. R. Civ. P. 12(b)(6). Decided without oral argument under Fed. R. Civ. P. 78, Defendants' motions are denied.

## BACKGROUND

When a mortgage agreement requires a homeowner to carry hazard insurance for the property, and the homeowner fails to obtain the required coverage, the lender may "independently obtain insurance and add the cost of the premiums to the principal due under the

NOT FOR PUBLICATION

note—in order to protect its security interest in the property." *Caplen v. SN Servicing Corp.*, 343 Fed. App'x 833, 834 (3d Cir. 2009). This is known as a "force-placed" insurance policy (or sometimes "lender-placed insurance," abbreviated as "LPI"). *Id.*

Plaintiff Pedro Santos brings this action against Defendant Carrington Mortgage Services, LLC ("Carrington"), as well as American Modern Insurance Group, American Modern Home Insurance Company, Midwest Enterprises, Inc. (collectively, the "AMIG Defendants"), and Southwest Business Corporation ("SWBC"), on behalf of himself and all others similarly situated. Compl., ECF No. 1.[1] Carrington services Plaintiff's mortgage loan. *Id.* ¶ 48. The AMIG Defendants issue force-placed insurance policies. *Id.* ¶¶ 3-6. SWBC administers the force-placed insurance program for Carrington. *Id.* ¶ 7. Plaintiff seeks to represent a class of borrowers who "were charged for a force-placed hazard insurance policy placed on property through Carrington and/or its affiliates, entities, or subsidiaries." *Id.* ¶ 54.

In an alleged conspiracy among the Defendants, Carrington "purchases unconscionably high-priced insurance policies from the AMIG Defendants, and in exchange . . . receive[s] fees, payments, commissions, kickbacks, ceded reinsurance or other things of value from the AMIG Defendants." *Id.* ¶ 9. "Carrington then charges borrowers an amount it claims is the cost of insurance, but in fact includes the secret fees, commissions, kickbacks and other illicit consideration the AMIG Defendants remit to Carrington or its affiliates." *Id.* SWBC is described as "an agent for both Carrington and the AMIG Defendants in the procurement and placement of AMIG Defendants' force-placed insurance," and a participant in the kickback scheme. *Id.* ¶¶ 10, 109-10, 123.

---

[1] The Court must accept the truth of the complaint's factual allegations for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

NOT FOR PUBLICATION

According to the complaint, Carrington force-placed insurance policies on Plaintiff's property in 2012, 2013 and 2014, *id.* ¶ 50, withdrawing money from Plaintiff's escrow account to purchase the policies from the AMIG Defendants. *Id.* ¶ 128. Plaintiff describes the coverage as "excess and unnecessary" to the protection of Carrington's security interest, in breach of Plaintiff's mortgage agreement. *Id.* ¶ 73. Carrington allegedly "[charged] Plaintiff and the Class for commissions when the insurance is prearranged and no commission is due," and "[charged] Plaintiff and the Class the cost of having the vendor perform its obligation of administering its mortgage portfolio, which is not properly chargeable to Plaintiffs or the Class." *Id.* ¶ 80. "The Defendants also charged Santos for backdated coverage. . . . Santos was charged for more than two months of coverage for time that had already elapsed without damage to the property or a claim being filed." *Id.* ¶ 52.

Plaintiff characterizes certain statements Defendants made to him as false and misleading. These include a notice sent by the AMIG Defendants and SWBC in May 2014, on behalf of Carrington, explaining that the cost of the force-placed insurance was higher than the cost of insurance Plaintiff could have obtained on his own "because the insurance we obtain is issued automatically without evaluating the risk of insuring your property." *Id.* ¶ 51. Plaintiff asserts that, to the contrary, the cost was actually higher "because the charge for insurance being imposed on the borrower included kickbacks and other illicit consideration the AMIG Defendants paid to Carrington." *Id.*

Plaintiff filed a complaint in this Court on February 4, 2015. ECF No. 1. The complaint asserts causes of action against Carrington for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, violation of the New Jersey Consumer Fraud Act ("NJCFA," N.J.S.A. § 56:8–2), and violation of the Truth In Lending Act ("TILA," 15

NOT FOR PUBLICATION

U.S.C. §§ 1601 *et seq*.). It accuses the AMIG Defendants and SWBC of violations of the NJCFA

and tortious interference with a business relationship. Finally, it seeks to hold Defendants

accountable under the Racketeer Influenced and Corrupt Organizations Act ("RICO," 18 U.S.C.

§§ 1962(c)-(d)).

Defendants moved to dismiss on April 20, 2015. ECF Nos. 38-40. They argue that the

complaint does not state facts sufficient to support any cause of action, and that Plaintiff's claims

are barred by the filed rate doctrine. *See id*.

## STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A

claim is plausible on its face "when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "A

pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of

action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further

factual enhancement." *Id*. (internal quotations and alterations omitted). "[W]here the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id*. at 679.

## DISCUSSION

I.      **The Filed Rate Doctrine Does Not Bar Plaintiff's Claims**

First, Defendants argue that Plaintiff's claims are barred by the filed rate doctrine. "The

filed rate doctrine provides that a rate filed with and approved by a governing regulatory agency

4

NOT FOR PUBLICATION

is unassailable in judicial proceedings brought by ratepayers." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3d Cir. 2009). "The classic example of the preemptive power of the doctrine occurs when a customer makes a claim for a rate that was not filed—such claims are barred." *Id.* (citations omitted). The filed rate doctrine applies in circumstances where a plaintiff is challenging the "reasonableness or propriety of the rate[s]" themselves. *Id.* at 765. Under New Jersey law, "[t]he costs charged to the debtor [for force-placed insurance] shall not be excessive or discriminatory. Any cost or element of cost which is approved by the Department of Banking and Insurance or filed with the department and not disapproved . . . shall not be deemed to be excessive or discriminatory for the purposes of this act." N.J. S.A. § 17:16V-3 (2014).

Evaluating a claim under the Real Estate Settlement Procedures Act ("RESPA"), the Third Circuit held in *Alston* that "the filed rate doctrine simply does not apply" in circumstances where plaintiffs "challenge [the defendant's] allegedly wrongful conduct, not the reasonableness or propriety of the rate that triggered that conduct." 585 F.3d at 765. District courts in this circuit have applied this reasoning to actions that do not arise under RESPA. *See Laffan v. Santander Bank, N.A.*, No. CIV.A. 13-4040, 2014 WL 2693158, at *4 (E.D. Pa. June 12, 2014) (addressing a claim involving LPI kickbacks under the New Jersey Consumer Fraud Act and other common law causes of action); *Gallo v. PHH Mortgage Corp.*, 916 F. Supp. 2d 537, 544 (D.N.J. 2012) (same).

Multiple district courts in other circuits likewise have rejected the filed-rate defense in cases involving similar kickbacks to those alleged here. *See, e.g., Rothstein v. GMAC Mortgage, LLC*, No. 12 Civ. 3412, 2013 WL 5437648, *9 (S.D.N.Y. Sept. 30, 2013) *certificate of appealability granted sub nom. Rothstein v. Balboa Ins. Co.*, No. 14-1112, 2014 WL 4179879 (2d Cir. June 25, 2014) ("Defendants have provided no authority to support the contention that

NOT FOR PUBLICATION

the Court can, should, or must grant 'per se reasonable' status to rates designed and approved for lenders when those rates are secondarily billed by the lenders to borrowers instead. . . . As such, Defendants are not entitled to dismissal of Plaintiffs['] claims against them on this basis[.]"); *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11–915–JST, 2012 WL 7051318, *4 n.2 (N.D. Cal. Dec. 20, 2012) ("to the extent that Plaintiffs are challenging Defendants' conduct in force-placing unnecessary, duplicative, or backdated insurance, as well as damage to the equity of their property, Plaintiffs are not challenging a filed rate"); *Kunzelmann v. Wells Fargo Bank*, No. 9:11–cv–81373, 2012 WL 2003337, *3 (S.D. Fla. June 4, 2012) ("I find that in this case Plaintiff's claims are not barred by the filed rate doctrine because he is not challenging the rates filed by Defendants' insurers. Rather, Plaintiff challenges the manner in which Defendants select insurers, the manipulation of the force-placed insurance process, and the impermissible kickbacks that were included in the premiums.")

A New Jersey statute identifies and bans the kind of kickbacks alleged here:

> No insurer . . . shall pay, allow, or give, or offer to pay, allow, or give, directly or indirectly, as an inducement to insurance, or after insurance has been effected, any rebate, discount, abatement, credit, or reduction of the premium named in a policy of insurance, or any special favor or advantage in the dividends or other benefits to accrue thereon, or any valuable consideration or inducement whatever, not specified in the policy of insurance, except to the extent that such rebate, discount, abatement, credit, reduction, favor, advantage or consideration may be provided for in rating-systems filed by or on behalf of such insurer and approved by the commissioner. No insured named in a policy of insurance . . . shall knowingly receive or accept, directly or indirectly, any such rebate, discount, abatement, or reduction of premium, or any such special favor or advantage or valuable consideration or inducement.

N.J.S.A. 17:29A–15.

As in the above cases, Plaintiff challenges Defendants' conduct, not the reasonableness or propriety of the rate itself. Plaintiff complains of Carrington's decision to purchase insurance from the AMIG Defendants, selecting "the *more* expensive force-placed insurance" because of

6

NOT FOR PUBLICATION

the kickbacks it receives. Compl. ¶ 11 (emphasis added). Plaintiff accuses the AMIG Defendants

of paying these kickbacks, the cost of which was passed on to Plaintiff. *Id.* ¶ 9. SWBC allegedly

acts as an agent for both parties to administer the scheme. *Id.* ¶ 10. This Court is persuaded by

the reasoning adopted by other courts in this circuit and in others: "just because the damages are

based on increased costs incurred as a result of the alleged kickback scheme does not transform a

challenge to conduct and practices into a challenge to the premiums." *Gallo*, 916 F. Supp. 2d at

549 (citing *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012)); *see also*

*Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1114-115 (N.D. Cal. 2013) (declining

to apply the filed rate doctrine, finding that the plaintiff's claim against the defendant bank was

not related to the lawfulness of the insurer's rate, but to the bank's decision to choose that insurer

to obtain a kickback). The filed rate doctrine does not bar Plaintiff's claims.

## II.     Plaintiff Adequately States a Claim for Breach of Contract Against Carrington

### A.  Plaintiff Makes Out a Prima Facie Case for Breach of Contract

The complaint alleges that Carrington's imposition of force-placed hazard insurance,

charging an amount that includes kickbacks, constitutes a breach of contract. Compl. ¶¶ 48-53,

68-74. Plaintiff asserts that the kickback scheme breached Section 9 of the mortgage agreement,

which states that if "Borrower fails to perform the covenants and agreements contained in this

Security Instrument . . . then Lender may do and pay for whatever is *reasonable* or *appropriate*

to protect Lender's interest in the Property . . ." *Id.* (emphasis added). Carrington counters that

Plaintiff's breach of contract claim must be dismissed because Carrington's alleged conduct was

expressly authorized by Section 5 of the mortgage agreement, which allows the lender to obtain

insurance coverage at the borrower's expense if the borrower fails to maintain coverage, and

NOT FOR PUBLICATION

disclaims that the cost of this coverage "might significantly exceed the cost" of the insurance the borrower could obtain on his own. Carrington's Br. 6-9; Compl. ¶ 49. Plaintiff responds that Section 5 of the mortgage agreement must be read in conjunction with Section 9. Pl.'s Br. 10.

To prevail on a breach of contract claim, a party must prove that a valid contract existed between the parties, the opposing party failed to perform a defined obligation under the contract, and the breach caused the claimant to sustain damages. *EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC*, 440 N.J. Super. 325, 345 (App. Div. 2015). Addressing nearly identical breach of contract claims arising from force-placed insurance, two courts in this circuit recently found that Sections 5 and 9 of the mortgage agreement should be read together, and that although the lender had the right to force-place insurance upon borrower's failure to maintain such insurance, the lender must exercise that right in a "reasonable and appropriate manner to protect its interest in the property." *Laffan*, 2014 WL 2693158, at *4 (collecting cases, and citing *Lauren v. PNC Bank,* 2013 WL 5565511, at * 6 (W.D. Pa. 2013)).

In this case, Plaintiff took out a mortgage loan owned and/or serviced by Carrington, which was governed by a mortgage agreement. Compl. ¶¶ 48-49. Sections 5 and 9 of the mortgage, read together, prohibit Carrington from abusing its discretion when force-placing insurance. Plaintiff adequately pleads that Carrington abused that discretion, and violated its obligation under the mortgage agreement, by selecting an insurance policy based on kickbacks. The kickbacks, charged to Plaintiff, constitute damages. Plaintiff has plead the elements of a breach of contract claim.

NOT FOR PUBLICATION

### B. Plaintiff Performed Its Relevant Obligations Under the Mortgage Agreement

Carrington objects to the breach of contract claim on the grounds that Plaintiff has failed to plead that he satisfied his obligations under the mortgage agreement. Carrington's Br. 8-9. Supporting this argument is a recent opinion in this district, analyzing a similar breach of contract claim involving an identical mortgage agreement. *DiGiacomo v. Statebridge Co., LLC*, No. CIV.A. 14-6694 JEI, 2015 WL 3904594, at *9 (D.N.J. June 25, 2015), submitted by Plaintiff at ECF No. 50-1. In *DiGiacomo*, the court dismissed the plaintiff's cause of action for breach of contract because the complaint did not allege that the plaintiff had met his obligations under the agreement. *Id.*

Although Plaintiff does not assert verbatim that he satisfied all his obligations under the mortgage agreement, the complaint permits this reasonable inference. Section 5 of the agreement anticipates that a borrower might fail to carry sufficient hazard insurance to protect the lender's security interest. To protect the lender in event of a lapse in coverage, the borrower is required to fund an escrow account, from which the lender may force-place insurance. Compl. ¶¶ 105. Because the contract provides a remedy when a borrower fails to pay for insurance, Plaintiff's only relevant obligation was to fund an escrow account so the lender could pay the insurance premiums and protect its interest. The complaint states that Carrington held Plaintiff's funds in escrow, and used those funds to pay insurance premiums, which included the cost of kickbacks. Compl. ¶¶ 127-29. The charges appeared on Plaintiff's escrow statement. *Id.* ¶ 50. The agreement allowed Carrington to force-place insurance, Plaintiff made funds available in escrow for this purpose, and Carrington purchased the insurance. This series of facts provides reasonable basis to infer that Plaintiff performed his contractual obligations.

Carrington's motion to dismiss Plaintiff's breach of contract claim is denied.

NOT FOR PUBLICATION

### III. Plaintiff Adequately States a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Against Carrington

Plaintiff maintains that "Carrington breached the implied covenant of good faith and fair dealing by making additional profits at Plaintiff's expense by force-placing insurance on his property and receiving kickbacks on that insurance, rather than placing insurance to protect its interest in the property." Compl. ¶ 80. Carrington obtained duplicative coverage, chose "insurance policies with artificially inflated premiums to maximize their own profits," "misrepresent[ed] the reason for the cost of the policies," and charged commissions when no commission was due. *Id.* Carrington suggests that this set of facts is not sufficient to support the cause of action. Carrington's Br. 10-14.

A covenant of good faith and fair dealing is implied in every contract in New Jersey. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (N.J. 2001). "Although the implied covenant of good faith and fair dealing cannot override an express term in a contract, a party's performance under a contract may breach that implied covenant even though that performance does not violate a pertinent express term." *Id.* "A party exercising its right to use discretion . . . under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." *Id.* at 1130. In the context of commercial transactions, the legislature has defined good faith as "honesty in fact in the conduct or transaction concerned." N.J.S.A. 12A:1–201(19); *Badiali v. New Jersey Mfrs. Ins. Grp.*, 220 N.J. 544, 554 (2015).

As other courts in this circuit have recognized, "[t]he purpose of a force-placement clause [such as Section Five of the mortgage] is to protect the lender's interest in the property securing

10

NOT FOR PUBLICATION

the mortgage loan." *Gallo*, 916 F. Supp. 2d at 552 (citing *Montanez v. HSBC Mortgage Corp. (USA)*, 876 F. Supp. 2d 504, 513-14 (E.D. Pa. 2012) (brackets in original)). Plaintiff asserts that Carrington made additional profits at his expense by force-placing insurance on his property and receiving kickbacks on that insurance, rather than placing insurance to protect its interest in the property. Evaluating almost identical facts, courts in several circuits have held that plaintiffs stated a claim for breach of the covenant of good faith and fair dealing. *See, e.g., Laffan*, 2014 WL 2693158, at \*5; *Montanez*, 876 F. Supp. 2d at 513-14; *McNeary–Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928 (N.D. Cal. 2012); *Williams v. Wells Fargo Bank N.A.*, No. 11–21233, 2011 WL 4901346 (S.D. Fla. Oct. 14, 2011). This Court agrees: a jury could find that Carrington unreasonably exercised its discretion by charging Plaintiff for the cost of a kickback, violating Plaintiff's reasonable expectations under the contract. Carrington's motion to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing is denied.

## IV.   Plaintiff Adequately States a Claim for Breach of Fiduciary Duty Against Carrington

A claim for breach of fiduciary duty requires more than "allegations . . . which reflect nothing more than a debtor-creditor relationship . . ." *Abulkhair v. Citibank & Assocs.*, 434 F. App'x 58, 63 (3d Cir. 2011). A fiduciary duty may arise under certain "special circumstances" where the creditor "knows or has reason to know that the customer is placing his trust and confidence in the [creditor] and relying on the [creditor] so to counsel and inform him." *United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 554 (App. Div. 1997). "[T]he common thread running through [such cases] is that the lender encouraged the borrower to repose special trust or confidence in its advice, thereby inducing the borrower's reliance." *Id.* "It is well settled that an

NOT FOR PUBLICATION

escrow holder acts as an agent for both parties" and that an escrowee owes a fiduciary duty to all parties. *Matter of Hollendonner,* 102 N.J. 21, 26 (1985).

Plaintiff alleges that Carrington held funds in escrow for the purpose of paying borrowers' insurance premiums. Compl. ¶¶ 127-29. Carrington was obligated to hold, manage and control any escrow funds in trust and owed Plaintiff the highest fiduciary duty with respect to the handling of escrow funds. *Id.* ¶ 128. Under Plaintiff's theory, Carrington breached its fiduciary duty by knowingly receiving kickbacks after paying for force-placed insurance policies with escrow funds. *Id.* ¶¶ 128-29. In light of these factual allegations, Plaintiff sufficiently pleads the existence of a relationship with Carrington that allowed Carrington to use escrow funds under its control to gain monetary benefit at Plaintiff's expense. Carrington's motion to dismiss Plaintiff's breach of fiduciary duty claim is denied. *See Laffan,* 2014 WL 2693158, at *6.

### V.  Plaintiff Adequately States a Violation of TILA Against Carrington

Plaintiff accuses Carrington of violating TILA (15 U.S.C. §§ 1601 *et seq.*). Compl. ¶ 158. The fundamental purpose of TILA is to provide borrowers with clear and accurate disclosures of loan terms. *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412 (1998). TILA aims "to assure that consumers are offered and receive residential mortgage loans on terms . . . that are understandable and not unfair, deceptive, or abusive." 15 U.S.C. § 1639b(a)(2). It instructs that "a creditor may not change the terms of the extension of credit if such changes make the disclosures inaccurate, unless new disclosures are provided . . ." *Id.* § 1639(b)(2)(A). All "disclosures shall reflect the terms of the legal obligation between the parties." 12 C.F.R. § 226.17. "For each transaction, the creditor shall disclose . . . the amount financed," including

NOT FOR PUBLICATION

"any other amounts that are financed by the creditor and are not part of the finance charge." *Id.* § 226.18(b).

In the opinion of several courts, TILA requires a lender to provide new disclosures after charging a borrower for force-placed insurance. *See, e.g., Morris v. Wells Fargo Bank N.A.,* No. 2:11CV474, 2012 WL 3929805, at *14 (W.D. Pa. Sept. 7, 2012) (noting the line of authority commencing with *Travis v. Boulevard Bank, N.A.,* 880 F. Supp. 1226, 1229–30 (N.D. Ill. 1995), which concluded that "the Defendant's purchase of the allegedly unauthorized insurance and the subsequent addition of the resulting premiums to the Plaintiffs' existing indebtedness constituted a new credit transaction[;] Defendant's action involved augmenting the Plaintiffs' existing finance charge with an additional finance charge for the resulting premiums . . . ").

According to the complaint, Carrington violated TILA when it "(i) added charges for force-placed insurance to Plaintiff's mortgage obligations and failed to provide new disclosures; and (ii) failed at all times to disclose the amount and nature of the kickback, reinsurance, discount loan monitoring, or other profiteering involving Defendant Carrington or its affiliates as a result of the purchase of force-placed insurance." Compl. ¶ 158.

Carrington contends that TILA's disclosure provisions do not apply when a mortgage agreement notifies the borrower that the lender may force-place insurance if coverage lapses. Carrington's Br. 23, citing *Gordon v. Chase Home Fin., LLC*, No. 11-2001, 2013 WL 256743, at *8 (M.D. Fla. Jan. 23, 2013). The regulation cited in that case directs that "[p]remiums for insurance against loss of or damage to property . . . may be excluded from the finance charge if . . . [t]he insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed." 12 C.F.R. § 226.4(d)(2) (emphasis added).

NOT FOR PUBLICATION

As other courts have found, this provision does not bar the type of TILA claim Plaintiff advances. *See Jackson v. U.S. Bank, N.A.*, 44 F. Supp. 3d 1210, 1219 (S.D. Fla. 2014); *Cannon v. Wells Fargo Bank N.A.,* 917 F. Supp. 2d 1025, 1045 (N.D. Cal. 2013). The payment that Carrington allegedly received from the AMIG Defendants, the cost of which was passed on to Plaintiff, is not a "premium[] for insurance against loss of or damage to property"—it is a kickback. *See Jackson*, 44 F. Supp. 3d at 1219 ("Kickbacks are not properly classified as 'premiums for insurance' . . ."). If Carrington billed Plaintiff for the insurance, changing the terms of Plaintiff's loan by increasing his indebtedness, TILA required Carrington to make an itemized disclosure of the new finance charge, including the amount of any "commission." *See Cannon,* 917 F. Supp. at 1046 (holding that 12 C.F.R. § 226.4(d)(2) did not bar the plaintiff's TILA claim because, even though "the excessive insurance coverage was authorized . . . the kickback . . . was not."). The complaint's allegations are sufficient to state a prima facie violation of TILA, whose purpose is to prevent deception involving the amount financed by requiring accurate disclosures. Defendant's motion to dismiss Plaintiff's TILA claim is denied.

## VI. Plaintiff Adequately States a Violation of the New Jersey Consumer Fraud Act Against All Defendants

Counts III, IV and V of the complaint charge the Defendants with violating the NJCFA, which provides:

> [the] act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[ ] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.]

14

NOT FOR PUBLICATION

N.J.S.A. § 56:8–2. The term "unconscionable" implies a lack of "good faith, honesty in fact and observance of fair dealing." *Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 15 (1994). The act must be "liberally construed in favor of the consumer[.]" *Gonzalez v. Wilshire Credit Corp.,* 207 N.J. 557, 576 (2011). To succeed on a consumer fraud claim, a plaintiff must demonstrate "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss." *N.J. Citizen Action v. Schering–Plough Corp.,* 367 N.J. Super. 8, 12–13 (App. Div.), *certif. denied,* 178 N.J. 249 (2003).

The unlawful conduct Plaintiff identifies here is the kickback scheme and its concealment. The complaint alleges that the AMIG Defendants and SWBC, on behalf of Carrington, mailed Plaintiff a notice on May 8, 2014, explaining that the cost of the force-placed insurance was "significantly higher . . . because the insurance we obtain is issued automatically without evaluating the risk of insuring your property." Compl. ¶ 51. Plaintiff characterizes this statement as a misrepresentation: the high cost allegedly stemmed in part from the kickbacks, a fact which the letter omitted. *Id.* Defendants made the statement with the intent that Plaintiff gain the "impression that [he was] being charged for the cost of the necessary insurance coverage." *Id.* ¶ 88. Plaintiff's indebtedness was increased—an "ascertainable loss"—as a result of the illegal kickbacks. *Id.* ¶ 92. With the unlawful conduct, ascertainable loss and causation prongs satisfied, Plaintiff has pled the elements of an NJCFA claim. Defendants' motion to dismiss the cause of action is denied.

NOT FOR PUBLICATION

### VII.   Plaintiff Sufficiently Alleges Tortious Interference with a Business Relationship Against the AMIG Defendants and SWBC

"One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." *Nostrame v. Santiago*, 213 N.J. 109, 122 (2013) (citing Restatement (Second) of Torts § 766). "[T]he means utilized [to induce the breach] may be neither improper, nor wrongful." *Nostrame*, 213 N.J. at 123 (citing Restatement (Second) of Torts §§ 766, 766B, 768). "[D]eceit and misrepresentation can constitute wrongful means." *Nostrame*, 213 N.J. at 124.

Because Plaintiff pleads that Carrington breached the parties' mortgage agreement by charging Plaintiff for the cost of kickbacks it received, Compl. ¶¶ 68-74, and that the AMIG Defendants and SWBC intentionally and improperly caused such breaches by providing the kickbacks to Carrington, *id.* ¶¶ 30-47, 120-25, Plaintiff has sufficiently stated a claim for tortious interference. *See Jackson v. U.S. Bank, N.A.*, 44 F. Supp. 3d 1210, 1219 (S.D. Fla. 2014) (finding same on similar facts). Defendants' motion to dismiss this cause of action is denied.

### VIII.   The Complaint Adequately States a § 1962(c) RICO Claim

Plaintiff also claims that Defendants' alleged conduct violated the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. §§ 1962(c)-(d). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Section 1962(d) makes it unlawful "for any person to conspire to violate" § 1962(c). A RICO

NOT FOR PUBLICATION

claim under § 1962(c) requires the plaintiff to allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362-63 (3d Cir. 2010). An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* (citing 18 U.S.C. § 1961(4)). A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period. *Id.* (citing 18 U.S.C. § 1961(5)). "These predicate acts of racketeering may include, *inter alia,* federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343." *Id.* (citing 18 U.S.C. § 1961(1) (defining "racketeering activity")).

Among the several courts which have permitted RICO claims to proceed on comparable facts, the most detailed discussion can be found in *Rothstein*, 2013 WL 5437648, at *9-19. This Court agrees with the reasoning of *Rothstein*, and analyzes Plaintiff's analogous claim more briefly here.

### A. Plaintiff Alleges Racketeering Conduct by All Defendants

A defendant must "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). A defendant must "have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). "[O]ne is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id.* at 183. "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. "Outsiders" may also meet the statutory requirement if they

NOT FOR PUBLICATION

"exert control over" the enterprise, but such outsider defendants must have "conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." *Id.* at 184–85.

Each Defendant is alleged to have participated in the enterprise's affairs, exercising some degree of control. Carrington purchased the insurance and received the kickbacks, *id.* ¶ 9, the AMIG Defendants sold the insurance and paid Carrington the kickbacks, *id.*, and SWBC acted as the parties' agent. *Id.* ¶¶ 10, 109-10, 123. The conduct prong is met.

### B.   Plaintiff Alleges an Enterprise

An association-in-fact enterprise requires a shared "purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 370. As described in the complaint, Carrington, AMIG Defendants and SWBC constitute such an enterprise. Their alleged common purpose was to force-place excessive hazard insurance on unsuspecting borrowers through a kickback scheme. Compl. ¶ 135. Each was associated with the relevant transactions, and the enterprise continued over a period of years. *Id.* ¶¶ 50, 136. An association-in-fact enterprise exists here.

### C.   Plaintiff Alleges a Pattern of Racketeering Activity

The alleged predicate acts here are mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. Compl. ¶ 137. Mail or wire fraud consists of: "(1) a scheme to defraud; (2) use of the mails [or wires] to further that scheme; and (3) fraudulent intent." *Amos v. Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 168 (3d Cir. 2013) (citations omitted). "Because in this case, the predicate acts are mail and wire fraud, [Plaintiff] must meet the heightened pleading requirement of Rule 9(b)." *Grant v. Turner*, 505 F. App'x 107, 111 (3d Cir. 2012). "In alleging fraud or

NOT FOR PUBLICATION

mistake, a party must state with particularity the circumstances constituting fraud or mistake."
Fed. R. Civ. P. 9(b). "The plaintiff must plead or allege the date, time and place of the alleged
fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."
*Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007). "[N]o defendant can be liable under
RICO unless he participated in two or more predicate offenses sufficient to constitute a
pattern." *Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir. 1990).

In *Rothstein*, the court found that the complaint provided "specific examples of the warning
letters and notices of force-placed LPI that were sent to Plaintiffs by [the loan servicer's agent],
on behalf of [the servicer]. These letters contain the specific statements, list the precise dates on
which the letters were sent, and show to which Plaintiff the letters were addressed." *Rothstein,*
2013 WL 5437648, at *13. As in *Rothstein*, this complaint specifies the document in which the
false statement was made ("form letters to Plaintiff" from the AMIG Defendants and SWBC on
Carrington letterhead), Compl. ¶¶ 138-39, identifies the statement ("the cost of the insurance
coverage we obtain may be significantly higher than the cost of insurance you could obtain on
your own. . . . because the insurance we obtain is issued automatically without evaluating the risk
of insuring your property"), *id.* ¶ 139, and lists the date on which the letter was sent to Plaintiff
(May 8, 2014). *Id.* ¶¶ 142-43.

Plaintiff's complaint identifies "one such" infringing letter dated May 8, 2014, Compl. ¶¶
142-43, and mentions others more generally. *Id.* ¶¶ 138 (the AMIG Defendants and SWBC "sent
form letters to Plaintiff on Carrington letterhead"), 144 (Defendants "mailed . . . numerous
materials, including but not limited to the notices and letters described above"). Although this
description on its own would not be enough to satisfy either Rule 9 or § 1961(5), Defendants do
not dispute that multiple force-placed notices were sent, *see* Carrington's Br. 17, and Carrington

NOT FOR PUBLICATION

provides additional letters with its motion. Ex. 1-9. Decl. of Charles Falletta, ECF No. 40-3. The Court construes these letters as incorporated into the complaint by reference. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 (3d Cir. 1994). In a letter to Plaintiff dated March 18, 2014, for instance, Carrington makes the same statement that the policy costs as much as it does "because the insurance we obtain is issued automatically without evaluating the risk of insuring your property." Ex. 4 to Falletta Decl.

Taking the complaint's factual allegations as true, these statements fail to mention the kickback scheme as the true reason for the higher cost, a material omission that could constitute a scheme to defraud, furthered by use of the mails.[2] The "common purpose [ ] to increase and maximize their revenues," Compl. ¶ 135, achieved in part by their "drafting of the language of the letters," demonstrates Defendants' fraudulent intent. *Id.* ¶ 145. It follows that Plaintiff alleges a pattern of racketeering activity, and the complaint states a RICO claim under § 1962(c).

## IX. Plaintiff Adequately States a § 1962(d) RICO Claim Against All Defendants

Plaintiff alleges that each Defendant violated 18 U.S.C. § 1962(d) as well. "RICO conspiracy is not a mere conspiracy to commit the underlying predicate acts. It is a conspiracy *to violate RICO*—that is, to conduct or participate in the activities of a corrupt enterprise." *Zavala*

---

[2] One court has correctly pointed out why such letters are fraudulent, despite their disclaimers about the high premiums of force-placed insurance:

> "In *Weinberger v. Mellon Mortgage Co.*, 1998 WL 599192 (E.D.Pa. Sept. 10, 1998), the court concluded that none of the acts in the alleged scheme . . . could be reasonably calculated to deceive, as the warning letters and notices had specifically stated that the force-placed insurance was a more expensive product that would not protect the plaintiffs' interests . . . In the current case, on the other hand, Plaintiffs do not allege that the fraudulent scheme was intended to misrepresent the nature of LPI or trick them into lapsing on their payments. Rather, the alleged scheme here is more simple: that 'costs' and 'reimbursements' listed in the letter as legitimately owed were materially overstated."

*Jackson v. U.S. Bank, N.A.*, 44 F. Supp. 3d 1210, 1217-18 (S.D. Fla. 2014).

NOT FOR PUBLICATION

*v. Wal Mart Stores Inc.*, 691 F.3d 527, 539 (3d Cir. 2012). "[A] defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity." *Banks*, 918 F.2d at 421. To state a RICO conspiracy claim under § 1962(d), "a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were a part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b) or (c)." *Grant*, 505 F. App'x at 112.

Plaintiff's allegations are sufficient to state a § 1962(d) claim. As discussed above, Plaintiff has stated predicate acts of conspiracy involving all Defendants. The conspiracy involved materially misrepresenting the relationship between insurer and lender, a conscious pattern of violations targeted at multiple borrowers, manifested in letters sent by mail, for the profit of all involved. "[W]e may infer from the language of the plaintiffs' RICO conspiracy claims, each of which refer to a conspiracy to engage in the conduct of an enterprise's affairs, the requisite *mens rea* comprising knowing furtherance of the enterprises' affairs." *Rose v. Bartle*, 871 F.2d 331, 367 (3d Cir. 1989). The Defendants were allegedly knowing participants in this scheme. Compl. ¶¶ 145, 150. Defendants' motion to dismiss this count is also denied.

## CONCLUSION AND ORDER

It is hereby ORDERED that Defendants' motions, ECF Nos. 38-40, are denied.

DATE: 8 July 2015

Hon. William H. Walls
United States Senior District Judge